In re Ira N. SAMPSON, individually and as general partner of Tuchas Assoc., a Colorado general partnership, Debtor.

Katherine Lavonne SAMPSON, Plaintiff–Appellee,

v.

Ira N. SAMPSON, Defendant–Appellant.

No. 91–K–1451.
Bankruptcy No. 90–16978 RJB.
Adv. No. 91–1085 SBB.

United States District Court, D. Colorado.

July 24, 1992.

Dennis A. Lacerte, Case & Lacerte, Denver, Colo., for Katherine Lavonne Sampson.

Dana A. Temple, Harry M. Sterling, Gelt, Fleishman & Sterling, Denver, Colo., for Ira N. Sampson.

## MEMORANDUM DECISION ON APPEAL

KANE, Senior District Judge.

Ira Sampson, ("debtor" or "husband") appeals an order of the bankruptcy court that denied discharge of a debt to his former wife, Katherine Sampson ("creditor" or "wife") because it was in the "nature of alimony, maintenance or support" within the meaning of 11 U.S.C. § 523(a)(5). I conclude that the bankruptcy court applied the wrong legal standard but nevertheless reached the correct result and therefor affirm its decision.

### I. *Facts and Procedural History*

Husband and wife divorced in Denver District Court in 1984 after a nine year marriage. The decree and dissolution of marriage incorporated a comprehensive property settlement and permanent orders agreement ("agreement"). At the time of the divorce, the wife was a full-time homemaker with no income and about $4,000 in monthly expenses. The husband worked as a real estate broker and earned $14,850 per month against monthly expenses of $3,795.

Article I of the agreement is titled "Maintenance (Spousal Support)." By its terms, the husband promised to pay to the wife, "as and for maintenance," a total of $275,000 over a 96 month period. For the first five years, the husband promised to pay $3,333.33 per month. For the sixth year, he agreed to pay $2,500. per month.

For the seventh year he agreed to pay $2,083.33 per month. For the eighth and last year he promised to pay $1,666.66 per month. The husband promised to pay maintenance even if his wife remarried, but not if she died. He agreed to secure the maintenance by life insurance. For her part, the wife agreed that maintenance payments would not be revivable, nor would they be subject to increase or decrease for any reason other than a significant change in the tax laws of the United States or the state of the husband's residence. That is, the agreement was specifically conditioned upon the deductibility of the payments from the husband's gross income and the taxability of them to the wife. Article 1.9 provides:

> The parties further understand and agree that said maintenance payments are for the support of the Wife and are not in lieu of or partially in lieu of property division and that the parties have herein agreed to a fair and equitable division of marital property as hereinafter provided.

In Article III of the agreement husband and wife divided the balance of the remaining marital property. The husband testified that he structured the agreement as he did to take maximum benefit of the existing tax laws. He testified, as did his former lawyer and accountant, that the entire agreement was nothing more than a property settlement designed to be affordable to him in light of his wife's demands during settlement negotiations. He testified that he never sought to have the agreement modified in any way because his lawyer advised him that the agreement was not subject to modification because it was a property settlement, not an agreement for maintenance.

The husband and wife complied with their agreement until the husband filed a chapter 7 bankruptcy petition on November 1, 1990. On January 31, 1991, the wife filed a complaint to determine dischargeability of debt. The bankruptcy court held a hearing on August 7, 1991. The court found the agreement unambiguous and thus characterized the husband's obligation as alimony or maintenance. It refused to consider the husband's testimony that the

agreement was truly a property settlement, and thus entered judgment in favor of the wife. The bankruptcy court did, however, enter the following conclusions about the parties' intent, as follows:

> The judgment will be entered saying the obligation to make these payments is non-dischargeable, but I do want to go ahead and mention some other things in the event that—by the likely event that this decision may be appealed and perhaps remanded. I've heard this evidence now and I think I ought to go ahead and make the findings that I would make if I were going to look behind the document to avoid the necessity of another trial in case I get reversed and the matter gets remanded.

> But, what really happened here is that the parties unambiguously said something that they didn't intend that makes sense but what was intended was to provide for property settlement. The overwhelming weight of the evidence shows that, but in order to achieve the tax results that Mr. Sampson wanted, they unambiguously called the payments maintenance which allowed him to have tax benefits, so they intended to provide for a property settlement but disguised it as maintenance for tax reasons.

*Transcript of August 8, 1991* at 15, 16. The bankruptcy judge considered two circuit opinions, which he considered to be conflicting, in making his decision, *In re Yeates*, 807 F.2d 874 (10th Cir.1986), and *In re Goin*, 808 F.2d 1391 (10th Cir.1987). The bankruptcy judge understood *Yeates* to say that absent ambiguity in the agreement, it should *never* consider extrinsic evidence to determine the intent of the parties. He understood *Goin* to say that a bankruptcy court must *always* look beyond the language of the settlement or decree to the intent of the parties to determine the issue of maintenance or property settlement. He found *Yeates* and *Goin* irreconcilable. He chose to follow *Yeates* instead of *Goin* because, he reasoned, the bankruptcy courts should not become divorce courts, "except where [they] have to, and the only time [they] have to is where the

agreement is ambiguous and unclear." This appeal followed.

## II. *Discussion*

I don't think *Yeates* and *Goin* are irreconcilable though it is easy to see why the bankruptcy judge thought so. That *Goin* makes no reference at all to *Yeates* adds to the confusion and suggests that the two opinions are like ships passing in the night. Clearly, a clarification by the Court of Appeals would be of great benefit. In its absence, however, I will begin with an analysis of the statute in the light of both cases.

■ Section 523(a)(5) of title 11 exempts from discharge any debt to a former spouse

> for alimony to, maintenance for, or support of such spouse ..., in connection with a separation agreement, divorce decree, or other order of a court of record, or property settlement agreement, but not to the extent that— ...
>
> such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support. ...

What constitutes "alimony, maintenance or support" in this statute is a matter of federal bankruptcy law, not state law concerning domestic relations. *Yeates*, 807 F.2d at 878. This is so because a federal statute is being construed. The statute requires courts to eschew state labels, designations, and descriptive labels in determining whether a particular obligation is alimony or property settlement. The courts must determine whether the liability is *actually* in the nature of alimony, that is, whether the obligation has the purpose and effect of providing support for the spouse. The legislative history of the statute clearly indicates that what "constitutes alimony, maintenance, or support will be determined under the bankruptcy laws, not State law." H.R.Rep. No. 595, 95th Cong.2d Sess. 364, *reprinted in* 1978 U.S.Code Cong. & Ad.

News 5787, 5963, 6320. As Professor Clark notes however, "[i]t is more precise to say ... that state law governs the extent, purpose, qualifications and limitations of the obligation being characterized [because] ... the evaluation of those factors ... persuades the bankruptcy courts to place the obligation in one category or the other." 2 H. Clark, Jr., *The Law of Domestic Relations in the United States*, § 17.7 at 304 (2d ed. 1987). Professor Clark points out that, in theory, such a distinction should be possible to make "with reasonable certainty, but in practice it usually cannot be done, as the hopeless conflict and confusion in the bankruptcy cases demonstrates [sic]." *Id.*[1]

Nearly all the circuits agree that the "initial inquiry must be to ascertain the intention of the parties at the time they entered the stipulation or property settlement agreement." *Yeates*, 807 F.2d at 878; *Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir.1984); *Boyle v. Donovan*, 724 F.2d 681, 683 (8th Cir.1984); *Long v. Calhoun*, 715 F.2d 1103, 1007 (6th Cir.1983); *Crist v. Crist*, 632 F.2d 1226, 1229 (5th Cir.1980); *Melichar v. Ost*, 661 F.2d 300, 303 (4th Cir.1981), *cert. denied*, 456 U.S. 927, 102 S.Ct. 1974, 72 L.Ed.2d 442 (1982). We make this determination "by looking at the substance of the agreement viewed in the crucible of surrounding circumstances." *Crist*, 632 F.2d at 1229. This, however, is only the initial inquiry; it begins, but doesn't end here.

My review of the cases suggests a multiplicity of factors are considered in determining whether a particular obligation is alimony or not. First, "[a] written agreement between the parties is persuasive evidence of intent. [Where it] clearly shows that the parties intended the debt to reflect either support or a property settlement, then that characterization will normally control." *Yeates*, 807 F.2d at 878. Next, alimony is typically paid over a period of time in regular monthly installments.

---

1. The cases are collected in Annot., *Debts for Alimony, Maintenance and Support as Exceptions to Bankruptcy Discharge under 523(a)(5) of the Bankruptcy Code of 1978,* 69 A.L.R. Fed. 403 (1984). Professor Clark suggests that the case

confusion stems largely from the fact that the drafters of the Bankruptcy Code were not aware of the interdependence of alimony and property division. 2 H. Clark, Jr., *The Law of Domestic Relations* § 17.7 at 305.

*Goin*, 808 F.2d at 1392–93. Typically, it is paid where the recipient needs support because there is an imbalance of income or a need for retraining. *In re Woods*, 561 F.2d 27, 30 (7th Cir.1977). Where minor children are involved, the payments are likely to be in the nature of support. *Id.* It normally terminates upon death or remarriage and is otherwise modifiable upon a showing of changed circumstances. *Matter of Albin*, 591 F.2d 94, 97 (9th Cir.1979).

Professor Clark notes that the most difficult "case arises when [as here] the parties have agreed on a lump sum payable in installments over more than ten years with the objective of having the payments treated as alimony for tax purposes, but with the provision that the payments are not modifiable except on certain remote contingencies." *Domestic Relations* § 17.7 at 306. In *Shaver v. Shaver*, 736 F.2d 1314, the parties filed an amended divorce decree by whose terms the wife would receive $197,300 as a "marital and dower right." In the original decree, in addition to support payments, the wife was to receive $150,000 as a property settlement. The amended decree renamed the property settlement "support" and gave the wife an additional $47,300 to pay the appropriate taxes on the additional support payments received. The ninth circuit agreed that the payments were support and therefore not dischargeable. The court emphasized both the language of the agreement, and the wife's need for support given that she was unemployed, had no special job-related skills, and had custody of three minor children. 736 F.2d at 1317. Furthermore, the payments were to be made in installments over a substantial period of time and would cease if the wife dies. *Id.*

Similarly, in *Melichar v. Ost*, 661 F.2d 300, the fourth circuit treated as alimony and therefore a non-dischargeable debt payments from the debtor to his former wife that did not qualify under state law as alimony. The dissolution agreement provided for the husband to pay $66,550 in monthly installments over a period of 121 months. If the wife remarried, the husband's liability abated after 108 months. If either party died all liability for payments stopped. The court emphasized that

the parties intended the payments as support, both to maintain the "wife's economic position as during marriage" and to enable her "to meet her living expenses after the divorce...." 661 F.2d at 303.

Finally, in *In re Cox*, 543 F.2d 1277 (10th Cir.1976), the circuit considered a lump sum payment payable twice a month directly to the wife for a period of 84 months. The judgment described the payments as alimony and separately divided other specific real and personal property. The husband made the monthly payments for a year then discovered his wife had remarried. He moved, in the state court, to terminate the payments and to recover payments made after the wife's remarriage. The state court treated the payments as a property settlement because the decree did not specifically make the payments terminate upon death or remarriage. When the husband filed for bankruptcy, both the bankruptcy court and the court of appeals agreed the payments were dischargeable as a property settlement. Curiously, the court of appeals deferred to state law in determining that the obligation was dischargeable. 543 F.2d at 1279.

When I apply these principles to the facts of the instant case, I conclude that the parties intended the obligation as alimony, support or maintenance. First, the agreement itself speaks volumes that the parties intended the payments as support or maintenance, not as property division. The agreement separates some payments into property division, some into support. It describes the Article I payments, as and for maintenance. It specifically describes the maintenance payments as for the support of the wife and not in lieu of or partially in lieu of property division.

In this regard, I discount the husband's *post hoc* explanation that the payments were actually part of the property settlement. While the husband may have been motivated by tax considerations to call the payments support or maintenance, I determine the parties intent by what they said and what they did at the time they signed and later performed the agreement. Here, the husband called the payments support

and deducted the payments on his own tax returns. Likewise, the wife treated the payments as income and paid the appropriate taxes on it.

Second, I treat the payments as support because they were to be paid over an eight year period on a monthly basis. Third, the creditor here clearly needed support and there was a gross imbalance of income. At the time of the dissolution, the wife was unemployed, had no income, and had no specific skills marketable in the workplace.

In my view, the parties written intent and the wife's clear need for support outweigh those factors that tend to suggest a property division: the decreasing amounts of the payments, the obligation to pay even if the wife remarried, and the non-modifiability of the payments except on the remote contingency that the tax laws might change. Only the second factor is not understandable as a provision of a support agreement. The presence of decreasing amounts could suggest that the parties anticipated that the wife would need less and less as her ability to make a living for herself increased. Similarly, the agreement not to seek modification upon a change in circumstances could easily be a concession so that the husband would be certain about his future obligations. Accordingly, I hold that the husband's obligations were in the nature of support, maintenance or alimony and are thus not dischargeable as a matter of federal law.

█ The bankruptcy court below concluded that it could never look behind a settlement agreement unless it found the document ambiguous. Although this is a proper interpretive rule as a matter of contract law [2], it is not controlling in this area. The bankruptcy court must always consider the intent of the parties as one of the factors described above in determining the dischargeability of a marital obligation. Here, the bankruptcy court applied an incorrect legal standard but reached the correct result. Accordingly, I affirm its judgment.

---

**2.** I note parenthetically that the result here is in accord with the objective theory of contracts which holds that the parties' subjective intent and assent is largely irrelevant in determining their intent. As the *Restatement* puts it: "Neither real nor apparent intention that a promise be legally binding is essential to the formation of a contract...." *Restatement (Second) of Contracts,* § 21 at 63 (2d ed. 1979).