**In re Gary FRIEDRICH, Debtor.**

**Laura FRIEDRICH, Plaintiff,**

**v.**

**Gary FRIEDRICH, Defendant.**

**Bankruptcy No. 91–3358.
Related No. 91–32272.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

July 27, 1993.

David Honold, Toledo, OH, for plaintiff.

Jane L. Lackey, Toledo, OH, for defendant.

### *MEMORANDUM OPINION AND ORDER*

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon Plaintiff's Motion for Summary Judgment to Determine Dischargeability of Support Debts and Obligations. Defendant did not file a Motion for Summary Judgment or responsive pleading. The Court has reviewed the written arguments of counsel, supporting affidavits, and exhibits, as well as the entire record in the case. Based upon that review, and for the following reasons, the Plaintiff's Motion for Summary Judgment should be Granted.

### *FACTS*

Plaintiff and Defendant were married on July 31, 1984 and two (2) children were born as issue of the marriage. The parties were divorced in Defiance County, Ohio on October 3, 1988. Pursuant to the Judgment Entry of Divorce, Plaintiff was designated the residential parent of the parties' minor children subject to Defendant's obligation of support totalling Fifteen Hundred and 00/100 Dollars ($1,500.00) per month. At the time of divorce, Plaintiff was a full-time homemaker with no independent source of income. Defendant earned approximately One Hundred Twenty Thousand and 00/100 Dollars ($120,000.00) annually as owner and operator of several Domino's Pizza businesses.

According to Plaintiff, Defendant encumbered the real estate in May, 1988. On September 23, 1988, the parties entered into a Separation Agreement which was adopted by the state court and incorporated into the Judgment Entry. Neither party disputes the validity or finality of the Separation Agreement. Plaintiff states that Defendant sold his Domino's Pizza businesses on or about March 14, 1990. According to Plaintiff, the mortgage balance on the real estate as of March 18, 1992 is Thirty Six Thousand Six Hundred Forty Five and 61/100 Dollars ($36,645.61).

On June 6, 1991, Defendant filed a Petition for Relief under Chapter 7 of the Bankruptcy Code. The First Meeting of Creditors under Bankruptcy Code § 341 was convened on July 23, 1991. Defendant's discharge hearing is pending. Plaintiff's Complaint to Determine Dischargeability was filed on August 27, 1991. The Complaint was amended and filed on October 29, 1991. Defendant filed an Answer on October 17, 1991, and an Amended Answer on November 19, 1991. On November 12, 1991, this Court rendered judgment for Plaintiff on Count One of her Complaint; granted Plaintiff leave to amend her Complaint to include any other claims for spousal support; and declared nondischargeable all current child support and child support arrearages owing to Plaintiff by Defendant. Count Four (4) of the Amended Complaint was subsequently dismissed with prejudice.

After the Pre–Trial, Counsel for both parties agreed to submit this matter to the Court on Motions for Summary Judgment.

Plaintiff filed a Motion for Summary Judgment to Determine Dischargeability of Support Debts and Obligations. Defendant failed to file a responsive pleading or Motion for Summary Judgment.

### ISSUES

This case presents three (3) issues. First, whether Defendant's assumption of joint debts, namely the repayment of taxes, assessments and personal mortgage acquired on real estate subsequently awarded to Plaintiff pursuant to the Separation Agreement, is spousal support or maintenance, rendering the obligation nondischargeable under 11 U.S.C. § 523(a)(5). Second, whether Defendant's child support arrearages and all child support accruing subsequent to March 18, 1992 are nondischargeable debts under 11 U.S.C. § 523(a)(5). Third, whether Defendant's obligation to reimburse Plaintiff for one-half of all tuition expenses, laboratory fees, and book expenses reasonably and necessarily incurred by Plaintiff in obtaining a college degree is spousal support and therefore nondischargeable under 11 U.S.C. § 523(a)(5).

### LAW

11 U.S.C. § 523(a)(5)(A) and (B) read as follows:

(a) A discharge under section 727, 1141, [,] 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act [42 USC § 602(a)(26)], or any such debt which has been as-

signed to the Federal Government or to a State or any political subdivision of such State); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

### DISCUSSION

#### I. CORE PROCEEDING.

This Court has jurisdiction to hear and determine all core proceedings. Under 28 U.S.C. § 157(b)(2)(I), a core proceeding encompasses any determination regarding the dischargeability of particular debts. Based upon those issues presented, this case is a core proceeding.

#### II. STANDARD FOR SUMMARY JUDGMENT.

Rule 56 of the Federal Rules of Civil Procedure and Bankruptcy Rule 7056 provide that summary judgment will be granted when the movant can demonstrate that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant must be able to demonstrate all elements of the cause of action in order to prevail. *R.E. Cruise, Inc., v. Bruggeman*, 508 F.2d 415, 416 (6th Cir.1975). A Motion for Summary Judgment must be construed in the light most favorable to the party opposing the Motion. *In re Weitzel*, 72 B.R. 253, 256 (Bankr.N.D.Ohio 1987) (citing *In re Sostarich*, 53 B.R. 27 (Bankr.W.D.Ky.1985)).

#### III. DISCHARGEABILITY OF DEFENDANT'S OBLIGATION TO PAY MORTGAGE, REAL ESTATE TAXES AND ASSESSMENTS.

Plaintiff seeks a determination that Defendant's obligation for the mortgage, tax, and insurance indebtedness on the real estate constitutes spousal support or maintenance and is therefore nondischargeable. Pursuant to 11 U.S.C. § 523, if the obligation to pay is for spousal support or maintenance, the debt is nondischargeable.

Conversely, if the payment or Settlement Agreement is strictly a property settlement, the debt is dischargeable. When the property settlement is in connection with alimony, maintenance, or support, the debt is nondischargeable. *In re Singer*, 787 F.2d 1033 (6th Cir.1986). Typically, Bankruptcy Courts have found that "hold harmless" clauses create nondischargeable obligations. *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103 (6th Cir.1983), (citing *In re Petoske*, 16 B.R. 412 (Bkrtcy. E.D.N.Y.1982); *Matter of Gentile*, 16 B.R. 381 (Bkrtcy.S.D.Ohio 1982); and *In re French*, 9 B.R. 464, 466–67 (Bkrtcy. S.D.Cal.1981)).

■ Bankruptcy Courts are not empowered to create support obligations where none exists. *DeSylva v. Ballentine*, 351 U.S. 570, 580, 76 S.Ct. 974, 980, 100 L.Ed. 1415 (1956). Creation of such obligations is within the province of state courts. However, when a federal statute is being construed, the standard for what constitutes spousal support or maintenance is a matter of federal bankruptcy law, not of state law concerning domestic relations. *In re Sampson*, 142 B.R. 957 (D.Colo.1992) *aff'd* 997 F.2d 717 (10th Cir.1993) (citing *In re Yeates*, 807 F.2d 874 (10th Cir.1986)).

■ The party seeking an exception from discharge in bankruptcy has the burden of establishing nondischargeability. *In re Daiker*, 5 B.R. 348 (Bankr.D.Minn. 1980). To be discharged under § 523(a)(5), the debt must be: (1) directly payable to the spouse, former spouse or child of the debtor; (2) designated as alimony to maintenance for, or support of such spouse or child; (3) the result of a separation agreement, divorce decree, or property settlement agreement; and (4) actually in the nature of alimony, maintenance or support. *In re Bedingfield*, 42 B.R. 641 (D.Ga.1983).

■ The Sixth Circuit in *Calhoun*, 715 F.2d at 1107, held that in determining whether the assumption of a joint obligation results in nondischargeable debts, the threshold inquiry must be to ascertain whether the assumption of debts is actually "in the nature of spousal support or alimony," having the effect and purpose of providing support for the spouse. If the response to this inquiry is "no", further inquiry need not ensue. If the response is "yes", an initial factual determination must be made regarding whether the parties "intended to create a support obligation." If the intent to create an obligation of support does not exist, the inquiry ends since there is no basis for the Bankruptcy Court to create a nondischargeable obligation. If the response to this inquiry is "yes", then the Court may infer from any relevant evidence used in state courts those facts which determine if the requisite intent exists. State courts typically consider the following: (1) nature of the obligations assumed; (2) the structure and language of the parties' agreement or the court's decree; (3) whether other lump sum or periodic payments were also provided; (4) length of the marriage; (5) the existence of children of the marriage; (6) relative earning powers of the parties; (7) age, health and work skills of the parties; (8) the adequacy of support absent the debt assumption; and (9) evidence or negotiation or other understandings as to the intended purpose of the assumption. *Id*, note 7.

Since intent does not exclusively control the issue of whether the assumption of a debt constitutes an obligation of support or property disposition, further inquiry must be made into the effect of providing the support necessary to ensure that the daily needs of the former spouse and any children of the marriage are satisfied. *In re Johnson*, 144 B.R. 209 (Bkrtcy.D.N.H. 1992). If the response to this inquiry is "no", the inquiry ends and the Debtor's obligation to hold the former spouse harmless must be discharged. *In re Calhoun*, 715 F.2d at 1109. When the response to the inquiry is "yes", the Court should look at the practical effect of the discharge of the loan upon the dependent spouse's ability to sustain daily needs. *Id.*, at 1109.

Finally, a determination must be made regarding whether the amount of support represented by the assumption is not so excessive that it is manifestly unreasonable under traditional concepts of support. *In*

re *Calhoun,* 715 F.2d at 1110. This inquiry is measured by assessing whether the amount agreed to is manifestly unreasonable in view of the earning power and financial status of the Debtor's spouse. If the Bankruptcy Court finds that the loan assumption is too excessive to be fairly considered in the nature of support, it must set reasonable limits on the nondischargeability of that obligation for purposes of the bankruptcy. *Id.,* at 1110. Use of the same factors similar to those a state court would employ to formulate a reasonable limit on support may be used to serve that limiting function in the context of a dischargeability determination. *Id.,* at 1110. If the circumstances of the Debtor have changed from the time that the obligation ensued to present, making payment untenable, the Bankruptcy Court **may** (emphasis added) consider the debtor's current general ability to pay as it relates to the continuing obligation to assume joint debts. *Id.,* note 11.

In the case at bar, this Court must look beyond the characterization of the real estate to Plaintiff as merely a property settlement, particularly since the content of Article III in the Separation Agreement contains vestiges of support, maintenance or alimony. Relevant portions of Article III read as follows:

### Article III: Disposition of Property.

"Wife shall receive the following items of property: house and lot located at 225 Harding Street, Defiance, Ohio, together with all household goods, furnishings and appliances located therein; Wife agrees that husband may mortgage the real estate at 225 Harding Street, Defiance, Ohio, and encumber the same up to 80% of the purchase price of said property. Husband agrees that any such mortgage shall be fully paid and satisfied with 3½ years from the date of the final hearing of the Divorce action now pending between the parties, or upon husband's sale of his interests in the Domino's Pizza businesses located in Bryan and Napoleon, Ohio, whichever shall first occur. Husband shall pay and hold wife absolutely harmless against any and all claims on account of such mortgage indebtedness and further agrees that he will carry credit life insurance at his cost insuring that the balance of any and all mortgages placed upon the premises by him will be paid in full in the event of his death before satisfaction and discharge of the mortgage balance. Husband further agrees to pay the premium for fire and extended casualty insurance, real estate taxes and assessments for the home located at 225 Harding Street, Defiance, Ohio, for so long as the premises remain encumbered by any mortgage debt incurred by the husband."

The Separation Agreement and Judgment Entry memorializing the terms under which Defendant could mortgage the real estate were journalized on October 3, 1988. Since the subject mortgage was incurred prior to the legal termination of the marriage, it is tantamount to a joint marital debt. Defendant's subsequent assumption of this debt is not dissimilar to his assumption of any other joint marital debt and consequently the analysis espoused in *Calhoun* is dispositive. Under the principles established in *Calhoun,* Defendant's assumption of this joint debt is "in the nature of alimony, maintenance or support" even though it is characterized as a division of property.

The intent of these parties to create an obligation of support in the disposition of real property can be inferred from the content of the Separation Agreement. The common thread throughout the entire Separation Agreement appears to be that Plaintiff's interest in the real estate should remain intact under all circumstances. However, upon receipt of the real property, Plaintiff's interest was subjugated to that which was less than what was contemplated by parties in their written agreement. In consideration thereto, all conditions surrounding the encumbrance were constructed to relieve Plaintiff of any indebtedness. For instance, Defendant agreed to hold Plaintiff harmless on the mortgage indebtedness. Moreover, Defendant agreed to maintain and pay the premiums for fire

insurance; extended casualty insurance; credit life insurance; real estate taxes; and other assessments, so long as the property was encumbered. The practical effect of Defendant's assumption of the mortgage indebtedness, insurance, and tax indebtedness; and Defendant's agreement to hold Plaintiff harmless on the mortgage indebtedness is that Plaintiff's entire income is free for purposes of providing her necessary support.

This Court may also infer from the nature and structure of the remaining terms of the Separation Agreement that the subject portion of the property settlement was intended as support. The parties' marriage lasted four (4) and ½ years. Under the agreement, Plaintiff is entitled to spousal support only in the event that Defendant obtains custody of the parties' minor children. As long as Plaintiff maintains custody, her sole source of income is Defendant's obligation for child support. In addition, Plaintiff was awarded a lump sum payment of Fifteen Thousand and 00/00 Dollars ($15,000.00) to be paid in two (2) installments; a 1987 Pontiac Grand Am automobile; and a policy of medical and health insurance. Defendant accepted responsibility for payment of all marital debt preceding March 18, 1988; continued payment of Plaintiff's medical and health insurance policy; and payments for her automobile. When these facts are considered along with the conditions under which Defendant could encumber the real estate, Defendant's intended purpose in assuming the indebtedness for any personal encumbrance on the real estate was to ensure that the daily needs of Plaintiff and the children were continuously satisfied. Defendant clearly intended that Plaintiff would be relieved of any payments on the real estate; and that her necessary support would be derived solely from her receipt of child support.

In the instant case, the evidence before the Court indicates that Defendant earned approximately One Hundred Twenty Thousand and 00/100 Dollars ($120,000.00) at the time of divorce. Plaintiff was not employed outside of the marital home. Defendant owned several Domino Pizza Restaurants which he sold post-divorce. Although Defendant has a substantial child support arrearage, he has failed to provide for the Court any substantive evidence of his current inability to pay the mortgage totalling approximately Thirty Six Thousand Six Hundred Forty Five and 61/100 Dollars ($36,645.61) as it relates to his continuing obligation to assume joint marital debts. Based upon the financial status of these parties at the time of divorce; the relative earning powers of the parties at the time of divorce; and prior work experiences or abilities of the parties, this Court does not find that Defendant's assumption of the joint debt on Plaintiff's real estate excessive to the extent that it exceeds the support which might reasonably have been awarded to Plaintiff in the state court. Therefore this Court does not find that Defendant's assumption of the subject joint debt to be manifestly unreasonable pursuant to traditional concepts of support.

This Court finds that Plaintiff has proven the coexistence of the elements under 11 U.S.C. § 523(a)(5). Defendant's assumption of the obligation to pay the mortgage, real estate taxes, insurances and assessments is actually in the nature of support. Further, Plaintiff has proven that Defendant's obligation to pay the mortgage, real estate taxes, insurances and assessments is an exception to discharge under 11 U.S.C. § 523(a)(5). Construing this evidence in a light most favorable to Defendant, this branch of Plaintiff's Motion for Summary Judgment should be Granted.

IV. **DISCHARGEABILITY OF DEFENDANT'S OBLIGATION TO PAY CHILD SUPPORT ARREARAGES ACCRUED SUBSEQUENT TO MARCH 18, 1992.**

On November 12, 1991, this Court rendered nondischargeable Defendant's current child support obligation and child support arrearages owing to Plaintiff. Plaintiff now seeks a determination that Defendant's postpetition child support obligation accruing subsequent to March 18, 1992 is nondischargeable. As of March 18, 1992, Defendant's child support arrearage

totalled Eighteen Thousand Two Hundred Sixty Seven Thousand and 81/100 Dollars ($18,267.81) plus two percent (2%) poundage.

Under 11 U.S.C. § 523(a)(5)(A) and (B), an obligation of support for children of the debtor is an exception to discharge to the extent that the obligation is not subject to assignment; or the obligation includes a liability designated as support to the extent that such liability is actually in the nature of support. In the case at bar, there is no evidence that Defendant's obligation of support is subject to an assignment of any kind designated in 11 U.S.C. § 523(a)(5)(A). Under 11 U.S.C. § 523(a)(5)(B), the child support obligation created in connection with a separation agreement is excepted from discharge to the extent that such liability is actually in the nature of support. When considering what factors constitute "actually in the nature of support," this Court again relies upon the analysis in *Calhoun*. Pursuant to *Calhoun*, the analysis begins with an inquiry into whether the assumption of the obligation is in the nature of support. An affirmative response mandates further inquiry as follows: (1) is there an intent to create an obligation of support; (2) is the effect of providing the support necessary to ensure that the daily needs of the children are satisfied; and (3) is the amount of support manifestly unreasonable under traditional concepts of support.

Under the Separation Agreement, Defendant agreed to pay child support as follows:

Husband shall pay wife, as and for periodic child support, the sum of $750.00 per child per month, said payments to be paid through the Child Support Enforcement Agency of Defiance County, Ohio.

Husband further agrees to pay all expenses reasonable and necessarily incurred by the children to obtain a four year collegiate education after graduation from high school. In the event of a dispute between the parties, or in the event of a dispute between the husband and either or both of the minor children concerning the educational institution to be attended, Husband's obligation shall be limited to payment of the reasonable and customary costs incurred for tuition, books, dormitory housing and dormitory cafeteria charges imposed for full-time in-residence study at whichever University own and operated by the State of Ohio as a public institution of higher education is then charging the highest tuition of students with Ohio Residency status. In the event the children, or either of them, fail to complete the degree requirements for a bachelor's degree within the four years customarily required, husband's obligation to pay the costs of collegiate education shall not be construed to require continued payment of such expenses for more than one additional year of study for either child nor shall the husband be obligated by this agreement to pay for or contribute to the costs of post-graduate education.

The provisions herein made for the support of the minor children are predicated upon the wife having a current income of zero and the husband having a current income in excess of $120,000.00 per year. Wife hereby acknowledges that she has been informed of the recommended schedules for periodic child support set forth in Rule 75 of the Supreme Court Rules of Superintendence of the Courts of Common Pleas and that she knows and understands that the provisions of this agreement require payment of a lesser sum by the husband than may be ordered by a Court applying said schedules to the computation of child support. The parties jointly represent that the establishment of child support in the amount herein specified is the result of a bargained-for exchange between them and is supported by adequate consideration, to wit:

1. The agreement of the husband ... to continue to provide for the children by contributing to the costs of a collegiate education for education for each ... notwithstanding attainment of the age of majority by the children prior to graduation from college;

2. The agreement of the husband ... to supplement the wife's household income by payment of alimony in the event that a change of custody ... to the husband should be ordered by any court prior to the attainment of age 12 by the child whose custody is so changed;

3. The agreement of the husband ... not to seek a reduction in the amount of child support ... on the grounds of a change in circumstances arising from any future reduction of the husband's income; provided, however, that husband shall be entitled to apply to any Court of competent jurisdiction for reassessment of the child support in the event that the husband's annual income should fall below $80,000.00;

This Court finds that the Separation Agreement speaks for itself. Its language and structure clearly show that Defendant's obligation of support is in the nature of support and that Defendant intended to create an obligation of support. The evidence in support of this contention is overwhelming. Defendant's obligation of support is specifically denominated as "child support." Defendant voluntarily agreed to pay an amount of support which exceeds that which is required under Rule 75 of the Supreme Court Rules of Superintendence. As a basis for the bargain, Defendant agreed to maintain the same level of support even though his income exceeds Eighty Thousand and 00/100 ($80,000.00) annually but falls below One Hundred Twenty and 00/100 Dollars ($120,000.00) annually. Further, Defendant voluntarily agreed to pay support in the form of college tuition for his emancipated children. Under the terms of this agreement, Defendant's obligation of support has the effect of ensuring that the daily needs of the children are satisfied even past their minority. This Court is convinced by the "bargained-for" exchange between these parties; the financial circumstances of the parties; and the state court's consideration and subsequent approval of the terms in this Separation Agreement, that Defendant's obligation of support is not unreasonable under traditional concepts of support.

Construing this evidence in a light most favorable to Defendant, this Court finds that in the instant case, Defendant's liability designated as child support is actually in the nature of support irrespective of when it was accrued; and that child support which is actually in the nature of support is nondischargeable under 11 U.S.C. § 523(a)(5). Therefore, this branch of Plaintiff's Motion for Summary Judgment should be Granted.

## V. DISCHARGEABILITY OF DEFENDANT'S OBLIGATION TO PAY ONE-HALF OF PLAINTIFF'S COLLEGE EXPENSES.

█ Pursuant to the Separation Agreement of these parties, Defendant agreed to pay a portion of Plaintiff's educational expenses while she obtains a post-high school degree. Plaintiff argues that Defendant's obligation to provide one-half of her college expenses is in the nature of support and therefore not dischargeable. The exact terms of Defendant's agreement are as follows:

### Article IV. Alimony.

Husband shall pay one-half of all tuition expenses, laboratory fees and book expenses reasonably and necessarily incurred by the wife in obtaining a 4 year collegiate education at the Defiance College or at such other educational institution whose tuition costs are equal to or less than those in effect at the Defiance College during the period of the wife's enrollment at such other institution. In no event shall husband be required to contribute to the costs of wife's post-high school education following remarriage of the wife or after December 31, 1994.

In the event that custody of one or both of the minor children should be changed from the wife ... husband shall supplement the wife's income by payment of alimony in the sum of $500.00 per month for a period not to exceed two years. The death of the wife, remarriage of the wife or graduation of the wife from college with a vocational or bachelor's degree prior to the occurrence

of any such change of custody shall extinguish husband's obligation to pay such periodic alimony upon the occurrence of a subsequent change in the custody of one or both of the children. In the event a change in the custody of one or both of the children should occur and husband commences payment of periodic alimony in accordance with the provisions of this paragraph, ... without benefit of marriage, graduation from college or vocational school.

Again, the principles of *Calhoun* are apropos. The evidence shows that Defendant's obligation to support Plaintiff in her pursuit of a collegiate education is directly payable to Plaintiff; is designated as "alimony"; and is the result of a Separation Agreement. Undoubtedly, Defendant's obligation of support is in the nature of support and has the effect and purpose of providing support. It is less clear whether Defendant's obligation to pay Plaintiff's college expenses is actually in the nature of support.

The most persuasive evidence regarding whether Defendant's obligation to pay college expenses is actually in the nature of support is the language of the Separation Agreement. Defendant's obligation to pay one-half of Plaintiff's college expenses is denominated as "Alimony." Defendant's obligation is conditioned upon the factors akin to those imposed by state courts in making awards of support. For instance, Defendant's payment of tuition costs is limited to the costs of tuition at Defiance College for a four (4) year degree Defendant is obligated to pay until Plaintiff graduates or withdraws from college even if she fails to obtain her degree within four (4) years; however, Defendant's obligation terminates in any event after five (5) years. Defendant's obligation terminates upon Plaintiff's remarriage or after December 31, 1994. The parties also agreed that these terms are not reviewable by the court nor subject to modification as to the amount, duration or contingencies upon which same is payable. The terms under which Defendant obligated himself for payment of Plaintiff's college expenses is truly in the nature of support.

The structure and tenor of this Separation Agreement also indicates that Defendant's assumption for payment of one-half of Plaintiff's educational expenses has the effect of further providing the support necessary to ensure that Plaintiff's daily needs are met. Plaintiff was awarded an automobile and real estate, free and clear of any encumbrances. Defendant is obligated to pay the taxes, insurances and other assessments so long as he maintains the mortgage on the real estate. Defendant is also responsible for payment of all marital debt preceding March 18, 1988. In addition, Defendant agreed to pay one-half of Plaintiff's educational expenses in her pursuit of a technical or college degree. When considering the total obligations assumed by Defendant, including his agreement to pay one-half of Plaintiff's educational expenses, Defendant intended to create a support obligation which has the effect of providing Plaintiff's entire necessary support.

Defendant's assumption of this obligation is not so excessive that it is manifestly unreasonable under traditional concepts of support. Based upon the evidence regarding the relative earning power of the parties; adequacy of support absent the debt assumption; Plaintiff's receipt of a lump sum payment; and the respective work skills of the parties, the state court adopted the Separation Agreement as its order. Defendant has failed to provide any evidence which would convince this Court to hold contrary to the state court's order. Consequently, Defendant's assumption of one-half of Plaintiff's educational expenses is not so excessive that it is manifestly unreasonable under traditional concepts of support.

Plaintiff has proven that Defendant's assumption of one-half of her college expenses is actually in the nature of support. Consequently, Defendant's obligation to pay one-half of Plaintiff's college expenses is excepted from discharge under 11 U.S.C. § 523(a)(5) and the third branch of Plaintiff's Motion for Summary Judgment is Granted.

This Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

*Accordingly, it is*

**ORDERED** that Plaintiff's Motion for Summary Judgment be, and is hereby **GRANTED.**