In re Joseph W. PLAUGHER, Debtor.

Joseph W. PLAUGHER, Plaintiff,

v.

Carol J. PLAUGHER, Defendant.

Bankruptcy No. 81–01355.
Adv. No. 81–0813.

United States Bankruptcy Court, N.D. Ohio, W.D.

Feb. 10, 1984.

Ronald A. Pagano, Lima, Ohio, for plaintiff.

Paul N. McKinley, Jr., Kenton, Ohio, for defendant.

## OPINION AND ORDER

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter is before the Court upon Plaintiff's complaint to determine the dischargeability of certain debts under 11 U.S.C. § 523(a)(5). Considering the stipulation of facts and briefs of the parties, the Court concludes that the obligations in question are dischargeable under the Bankruptcy Code.

## FACTUAL BACKGROUND

Plaintiff/Debtor, Joseph W. Plaugher, filed a voluntary petition under Chapter 7 of the Bankruptcy Code on July 7, 1981. Prior thereto, on December 19, 1980, Debtor was divorced from his then wife, Carol J. Plaugher, by decree of the Common Pleas Court of Hardin County, Ohio. Part of the divorce decree incorporated a voluntary property settlement agreement entered into between the parties.

The parties were married on July 6, 1965. Two children, Mark J. Plaugher and Todd W. Plaugher, were born of the marriage and were 15 and 13 years old, respectively, at the time of the divorce decree. Defendant was granted custody of the children under the divorce decree.

At the time of the divorce decree both parties were working. Plaintiff was em-

ployed at Rockwell as an hourly employee and Defendant held an hourly position at Kroger's at which she worked at least 30 hours per week.

The relevant portion of the divorce decree incorporating the parties property settlement agreement, etc., provided as follows:

1. That defendant have as her own, free of any claim of the plaintiff, the net proceeds from an insurance settlement resulting from a burglary at the residence of the parties on August 15, 1980, that she may receive from the Celina Group, in the anticipated amount of approximately $4,500.00; the 1975 Pontiac automobile, subject to the indebtedness thereon, which the defendant shall hold plaintiff harmless therefrom; all the household goods, furnishings, furniture and effects located in the residence of the parties as of the date hereof, subject to the indebtedness thereon, holding plaintiff harmless therefrom. Defendant shall further have, free of any claim of plaintiff, the residential real estate of the parties which is more particularly described in Hardin County Deed Volume 73, at Page 383; that plaintiff shall, not later than 30 days from date hereof, execute a Quit Claim Deed to the defendant for his interest in such real estate, and that the defendant shall thenceforth assume and hold plaintiff harmless from the mortgage indebtedness due and owing the Kissell Company and attributable to said residential real estate, and shall henceforth make monthly payments thereon, which the Court finds to include taxes and insurance. Provided, however, that the Plaintiff shall bring such mortgage account with the Kissell Company current, which such account has been in default since August, 1980, and the approximate amount of which is $1,600.00.

The provisions herein contained relative to the payment by the defendant of certain indebtedness are conditions by the provisions hereinafter contained relative to the assumption and payment by the plaintiff of the indebtedness due and owing the City Loan and Savings Company referred to in paragraph 3 below.

2. Plaintiff shall have free of any claim of defendant, the 1971 Jayco Camper, the snowmobile, the 1974 Honda motorcycle and such tools as may be located at the residence of the parties. Plaintiff shall assume and hold defendant harmless from any indebtedness against said property, and shall further hold defendant harmless from any deficiency balance that may be due and owing to GMAC as result of the repossession of plaintiff's pickup truck.

3. Plaintiff shall pay, and hold defendant harmless therefrom, the existing and outstanding balance due and owing the City Loan and Savings Company of Kenton in the approximate amount of $8,000.00.

4. Defendant shall assume and hold plaintiff harmless from the indebtedness due and owing to the Huntington National Bank of Kenton in the approximate amount of $1,000.00 and the Kroger Employees Federal Credit Union in the approximate amount of $2,000.00. Defendant shall further assume and hold plaintiff harmless from the indebtedness owing Uhlmans of Kenton and Greggs of Lima.

. . . .

It is FURTHER ORDERED that the plaintiff pay to the defendant as and for support for said minor children, the sum of Thirty Dollars ($30.00) per week per child, said support to be payable until said children attain the age of 18 years, or so long as the child continuously attends an accredited high school on a full time basis as provided by Section 3103.03, Ohio Revised Code, whichever event last occurs, or until said children become otherwise emancipated. Said support as aforesaid, shall be payable, together with poundage, through the Hardin County Bureau of Support. Plaintiff shall further pay all reasonable and necessary medical, hospital, dental and optical expenses incurred for the benefit of said minor children, which shall not have been paid by medical or hospitalization insurance, with the ex-

ception that defendant shall pay the first Sixty Dollars ($60.00) per year per child of such non-covered expenses.

## DISCUSSION

■ The only issue before the Court is the dischargeability of three obligations which, pursuant to the divorce decree, Plaintiff was to assume and hold Defendant harmless on. These obligations are the $8,000.00 due and owing to the City Loan and Savings Company, the $1,416.00 owed to General Motors Acceptance Corporation, and $1,600.00 owed to the Kissell Company. The determinative statutory provision is 11 U.S.C. § 523(a) which excepts from discharge, payments:

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of both spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support.

Pursuant to this provision the bankruptcy court, as trier of fact, must make a determination whether, as a matter of federal law, the assumption of joint debts is in the nature of nondischargeable alimony, maintenance, or support, or alternatively, a dischargeable division of communal property and debts.

■ This difficult and unenviable task has been facilitated in this circuit by virtue of the recent decision of the United States Court of Appeals for the Sixth Circuit in *Long v. Calhoun (In re Calhoun),* 715 F.2d 1103 (1983). In *Calhoun* the court set up a three part test for determining whether a particular loan assumption was "actually in the nature of" alimony and support for

purposes of the Bankruptcy Code as follows: first, the bankruptcy court must determine "whether the state court or the parties to the divorce *intended* to create an obligation to provide support through the assumption of the joint debts." 715 F.2d at 1109; second, "[i]f the bankruptcy court finds, as a threshold matter, that assumption of the debts was intended as support, it must next inquire whether such assumption has the *effect* of providing the support *necessary* to ensure that the daily needs of the former spouse and any children of the marriage are satisfied." *Id;* last of all, "[h]aving found that the loan assumption has the effect of providing necessary support, the bankruptcy court must finally determine that the amount of support represented by the assumptions is not so excessive that it is manifestly unreasonable under traditional concepts of support." 715 F.2d at 1110. In making the above determination, it is the spouse's, not the debtor's, burden to establish nondischargeability. *In re Calhoun, supra,* 715 F.2d at 1111 n. 15. Furthermore, since many of the factors considered in determining dischargeability could vary depending upon the type of the loan involved, its purposes and the circumstances of the parties, the dischargeability of each loan obligation assumed must be considered individually. 715 F.2d at 1111.

■ In making the initial inquiry whether the state court or the parties to the divorce intended to create an obligation to provide support through the assumption of joint debts, "the bankruptcy court may consider any relevant evidence including those factors utilized by state courts to make a factual determination of intent to create support." *In re Calhoun, supra,* 715 F.2d at 1103. As the court in *Calhoun* noted, among those factors most often considered relevant by state courts generally in determining whether to grant support are the following:

the nature of the obligations assumed (provision of daily necessities indicates support); the structure and language of the parties' agreement or the court's decree; whether other lump sum or periodic

payments were also provided; length of the marriage; the existence of children from the marriage; relative earning powers of the parties; age, health and work skills of the parties; the adequacy of support absent the debt assumption; and evidence of negotiation or other understandings as to the intended purpose of the assumption.

715 F.2d at 1108 n. 6.

■ The Court has considered all the relevant evidence in concluding, as trier of fact, that the obligations in question were not in the nature of alimony and support.

The Court will first consider the $8,000.00 obligation to the City Loan and Savings Company. This represented the second mortgage on the parties' residence which, pursuant to the property settlement, was given to the Defendant. Defendant was to assume and hold Plaintiff harmless on the first mortgage on the residence with the Kissel Company with the exception that Plaintiff was to pay the $1,600.00 arrearage on the first mortgage then outstanding.

It appears, from all the circumstances of this case, that the intentions of the parties with respect to their obligations on their residence was to effect a division of property and debts. The obligation to City Loan and Savings is contained in paragraph 3 of the decree. Paragraphs 1 through 4 of the agreement seem to deal almost exclusively with a division of the marital property and debts. While there is no paragraph granting alimony to the Defendant, support for the parties' children is dealt with in a separate paragraph of the parties' agreement, reproduced above. In sum, the general tenor of the parties agreement reveals that the $8,000.00 obligation to City Loan and Savings was intended by the parties as a part of their property settlement agreement incorporated into the divorce decree and not meant to provide the Defendant with additional alimony or support.

Other circumstances, such as the parties relatively equivalent earning capacity and the lack of the showing of the inadequacy of the support absent the debt assumption, corroborate this conclusion. Both parties

were regular hourly employees in permanent positions, Plaintiff being employed at Rockwell, Defendant a union employee at Kroger's. There has been no evidence to show a great disparity in the parties present or potential earning capacity or in their respective age, health, or work skills. Moreover, there has been no evidence introduced to show the inadequacy of Defendant's support absent the debt assumption. In sum, these circumstances militate in favor of a finding that the parties intended to effect a division of their property and debts in the decree when Plaintiff assumed the obligation to City Loan and Savings Company.

Defendant of course argues that a finding of dischargeability as to these obligations will impose a financial hardship on her and her children. The decree, however, makes a specific allowance of thirty dollars per week per child for the two children who were both teenagers at the time of the decree. This is not to deny that a finding of dischargeability might not adversely impact on Defendant's ability to support herself and her children. Recognizing this, however, the bankruptcy courts cannot categorically translate this into a determination that the obligation is in the nature of alimony and support. As the court in *Calhoun* noted:

The initial difficulty is that every assumption of a joint obligation in a divorce settlement at least indirectly contributes to support. The former spouse is relieved of payments on that debt and thus has funds for other purposes including necessary support. Support in this broad sense results even if the assumption of joint marital debts is actually a division of property. It is clear from the statute and legislative history that Congress could not have intended that all assumptions of joint debts would be nondischargeable. Such assumptions of debt are discharged 'to the extent that payment ... is not actually in the nature of alimony, maintenance or support ....' 124 Cong.Rec. 4, 11,096 (daily ed. Sept. 28, 1978) (Rep. Edwards) 517,412 (daily ed. Oct. 6, 1978)

(Sen. DeConcini). To interpret § 523 in this broad sense envisages results at odds with the 'fresh start' concept which underlies the Bankruptcy Act.

715 F.2d at 1108–1109. Under the circumstances of this case then, all other factors considered, despite whatever adverse impact the finding of dischargeability might have on Defendant's ability to support herself and her children, Defendant has failed to meet her burden of establishing nondischargeability.

An almost identical analysis applies to the obligation to the Kissel Company. The loan from the Kissel Company, as the obligation to City Loan and Savings, was an encumbrance on the parties' personal residence. There is no evidence showing that it was incurred for a different purpose or under different circumstances than the obligation to the City Loan and Savings Company. Although the obligation in question to the Kissell Company was unlike the obligation to the City Loan and Savings in that the former represented an obligation to pay an accumulated arrearage while the latter was an assumption of the secured mortgage, the Court finds the parties intentions as to both obligations were the same; that is, a division of the parties debts. Again, considering all the factors enumerated above, the Court finds the obligation to the Kissell Company was not "in the nature of" alimony or support. The analysis of the obligation to the General Motors Acceptance Corporation (GMAC) is similar. Although this debt represented a deficiency judgment from the repossession and sale by GMAC of Plaintiff's pickup truck, considering all the circumstances of this case, the Court finds the Plaintiff's assumption of this obligation was not intended by the parties to represent alimony or support to Defendant.

Having made an independent determination that the parties did not intend to create an obligation to provide support to Defendant by virtue of Plaintiff's assumption of each of the above obligations, the Court need go no further and determine whether the other tests of *Calhoun* are met. "There

is no basis for the bankruptcy court to create a non-dischargeable obligation for the debtor that the state court granting the divorce decree or the parties to that proceeding did not create." 715 F.2d at 1109. Even so, the Court finds that Defendant has failed to meet her burden of proving the assumption had the effect of providing the support necessary to ensure that the daily needs of the former spouse and any children of the marriage are satisfied. As discussed, *supra,* the evidence did not show any inadequacy of the support absent the assumption. Even if the Court found the parties intended to create an obligation to provide support to the Defendant or her children, there being no adequate showing she could not maintain the daily necessities such as food, housing, and transportation, the *effect* of the loan assumption has not been proven to be "in the nature of" support for purposes of the Bankruptcy Act. As in the case of a failure to meet the first test of *Calhoun,* "[i]f the loan assumption is not found necessary to provide such support, the inquiry ends and the debtor's obligation to hold the former spouse harmless must be discharged." 715 F.2d at 1109.

The Court having no need to go further in this opinion, all the obligations in question are discharged.

THEREFORE, GOOD CAUSE APPEARING, IT IS

ORDERED that the obligations in question be, and they hereby are, dischargeable under the Bankruptcy Code.

SO ORDERED.