In re Richard A. LUMAN, Debtor.

Nicole A. Luman, Plaintiff,

v.

Richard A. Luman, Defendant(s).

Bankruptcy Nos. 98–3067, 97–35070.

United States Bankruptcy Court,
N.D. Ohio.

April 14, 1999.

Edward L. Snyder, Holland, OH, for plaintiff.

Raymond L. Beebe, Toledo, OH, for defendant.

### MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Chief Judge.

This cause came before this Court upon the Complaint to Determine Dischargeability filed by the Plaintiff–Creditor. The matter was originally scheduled for trial. However, it was subsequently agreed by the Parties that as the matters addressed by the Plaintiff's Complaint were primarily issues of law, the outcome of the case could be resolved by the Court based upon the briefs and stipulation of facts submitted by the Parties. Each of the Parties has now filed their arguments, and has had the opportunity to respond to the comments made by the opposing counsel. This Court has now reviewed these briefs and the arguments and exhibits contained therein, as well as the stipulation of facts, and the entire record of the case. Based upon that review, and for the following reasons, the Court finds that the Debts enumerated in this opinion are nondischargeable pursuant to 11 U.S.C. § 523(a)(5).

## FACTS

This is an adversarial proceeding brought by the Plaintiff, Nicole A. Luman (hereinafter Plaintiff), pursuant to Bankruptcy Rule 7001(6), against her former husband, Richard A. Luman (hereinafter Debtor), the latter of whom filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code. The purpose for the Plaintiff's action is to prevent the Debtor from receiving a discharge on certain joint credit debts which the Debtor was ordered to completely assume pursuant to the Parties' divorce decree. Specifically, the Plaintiff contends that the Debtor's sole assumption of these debts was in the "nature of support," and thus the debts should be excepted from discharge under § 523(a)(5) of the Bankruptcy Code. The Debtor, however, asserts that § 523(a)(5) is not applicable because his assumption of the credit card debts was strictly in the nature of a property settlement. The Parties have stipulated that § 523(a)(15), which in certain circumstances excepts from discharge those debts not covered by § 523(a)(5), is not applicable in this case. In addition, the Parties have stipulated that the information contained in their divorce decree is correct. In making the determination of what outcome is appropriate, the Court finds the following information, provided by the Parties, germane to the case at bar.

The Parties to this action were married on July 6, 1991, and one child was born as issue from the marriage. However, after approximately six years of marriage the Parties, because of mutual incompatibility, sought and obtained a divorce in the Common Pleas Court of Wood County, Ohio. No alimony was awarded to either Party with the divorce decree specifically stating that "neither party shall owe the other party any spousal support." (Final Judgment Entry of Divorce at 3). In addition, the state court specified that this provision was non-modifiable. *Id.* However, the

state court did make the following allocation of the Parties' marital property.

The Plaintiff was awarded the marital home, out of which the Plaintiff currently operates a business. The equity in this property at the time of the divorce was Nineteen Thousand One Hundred Thirty-three and 77/100 Dollars ($19,133.77). (The Plaintiff recently sold the house to her mother and stepfather under a lease-back arrangement. The Plaintiff, however, netted only Eight Thousand Four Hundred Twenty-nine and 73/100 Dollars ($8,429.73) from the sale. Apparently, this lower figure is the result of the mother and stepfather's cancellation of some pre-marital debts incurred by the Plaintiff). In addition, the state court awarded the Plaintiff other personal property such as a computer, an automobile, and a bank account having a combined value of approximately Eight Thousand Four Hundred Forty-three Dollars ($8,443.00). However, the quid pro quo for being awarded the foregoing assets was that the Plaintiff was required to assume and hold harmless the Debtor from any debts or liabilities arising therefrom. The Plaintiff was also required to completely assume a joint credit card debt incurred by the Parties during their marriage in the amount of Nine Thousand Five Hundred Seventy-three and 10/100 Dollars ($9,573.10). The state court, after factoring in this debt allocation, ascertained the net distribution to the Plaintiff to be Sixteen Thousand Three Hundred Sixty-six and 89/100 Dollars ($16,366.89). On the other hand, the Debtor received the following allocation of the marital assets.

The Debtor was awarded his entire interest in a Public Employees Retirement System account (PERS) and a deferred compensation plan having a combined approximate worth of Thirty-three Thousand Five and 10/100 Dollars ($33,005.10). In addition, the Debtor was also awarded an interest in two bank accounts having at the time of the Parties' divorce a balance of Two Thousand Four Hundred Eighty and 09/100 Dollars ($2,480.09). However, the state court also required the Debtor to assume the Parties remaining credit card debts, and it is the assumption of these debts which constitutes the underlying dispute between the Parties. Specifically, the state court required the Debtor to assume the following joint credit card debts which had been incurred by the Parties during their marriage.

| CREDIT CARD | AMOUNT |
|---|---|
| Discover Card | $ 1,636.88 * |
| Glass City Federal Credit Union Visa | $ 4,984.19 |
| First USA Visa | $ 5,202.50 |
| Wachovia Credit Card | $ 5,283.20 |
| Travelers Bank Credit card | $ 3,344.96 |
| Total | $20,451.73 |

The reason given by the state court in the divorce decree for this debt allocation was that it was "intended to equalize the total property/debt division and takes into account the award of no spousal support." (Final Judgment Entry of Divorce at 4). After figuring in the foregoing debt allocation, the state court found the net distribution to the Debtor to be Fifteen Thousand Thirty-three and 46/100 Dollars ($15,033.46).

In terms of the Parties present financial situation, currently both the Plaintiff and the Debtor, who are in their middle 30's, are employed, and have submitted to the Court that their respective incomes and expenses are as follows: The Debtor, who works as a Deputy Sheriff with the Wood County Sheriff's Office, has a monthly income of Two Thousand Three Hundred Twenty-four and 80/100 Dollars ($2,324.80). However, after deductions for payroll taxes, deferred compensation, and child support payments for the Parties' daughter and a daughter by another relationship, the Debtor's take home pay is reduced to Nine Hundred Fifty-five and 08/100 Dollars ($955.08) per month. On the other side of the equation, the Debtor states that he has One Thousand Five

* This amount only represents one-half the balance of the credit card debt. The Plaintiff is responsible for paying the other half.

Hundred Twenty-seven and 50/100 Dollars ($1,527.50) in monthly expenses, which includes a rental payment of Seven Hundred Fifty Dollars ($750.00) per month. Thus, the Debtor's budget exhibits a net shortfall of Five Hundred Seventy-two and 42/100 Dollars ($572.42) per month.

By comparison, the Plaintiff, who is self employed and is the residential parent of the Parties' child, shows an income of approximately One Thousand Seven Hundred Sixty-six and 50/100 Dollars ($1,766.50) per month, based upon her gross income figures for the year 1996. However, the financial figures provided by the Plaintiff to the Court also show that the Plaintiff has monthly expenses of roughly Two Thousand Two Hundred Fourteen and 55/100 Dollars ($2,214.55), leaving her a short fall of well over Four Hundred Forty-eight and 05/100 Dollars ($448.05) per month considering that no deductions for taxes were taken into account for her gross income figure.

In support of her claim that the Debtor's assumption of the foregoing credit card debt was actually in the nature of support, and thus is excepted from discharge under § 523(a)(5), the Plaintiff has represented to the Court that if the Debtor is granted a discharge on the foregoing credit card debts, she would be unable to afford the payments on those debts. Further, according to the Plaintiff, if this were to occur there would then exist a distinct possibility that the creditors of such debt could potentially interfere with her business, which in turn would affect the Plaintiff's ability to support herself and her child. The Debtor, however, disputes the Plaintiff's inability to pay the credit card debts at issue, and points out that the Plaintiff has failed to present any evidence tending to show that any creditors will commence collection activities against her. In addition, the Debtor asserts that § 523(a)(5) is not even applicable because the state court did not intend to create a support obligation by requiring the Debtor to assume the Parties' credit card debts.

Specifically, the Debtor directs the Court's attention to the language of the Parties' divorce decree in which it was stated that no spousal support was to be awarded to either party, and that such a provision was non-modifiable. According to the Debtor this language clearly exhibits a lack of intent by the state court to treat the Debtor's assumption of the credit debts as support. Moreover, the Debtor asserts that the state court's failure to place a "hold harmless" provision in the section of the divorce relating to the Debtor's assumption of the credit card obligations, also exhibits a lack of intent by the state court to make the assumption of such debts in the nature of support.

## LAW

**11 U.S.C. § 523. Exceptions to Discharge**

(a) A discharge under section 727, 1141, 1228[a] 1228(b), or 1328(b) of this section does not discharge an individual debtor from any debt—

> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

> (B) such debt includes liability designated as alimony, maintenance or support, unless such liability is actually in the nature of alimony, maintenance, or support[.]

## DISCUSSION

This Court has jurisdiction to hear and determine all core proceedings. Under 28 U.S.C. § 157(b)(2)(I), a core proceeding encompasses any determination regarding the dischargeability of particular debts.

Therefore, based upon the Parties' pleadings, this case is a core proceeding.

■■■ The Plaintiff brings her Complaint to Determine Dischargeability under § 523(a)(5) which excepts from a bankruptcy discharge those debts contained in a divorce decree or separation agreement which are for the maintenance and support of the debtor's child or former spouse. This is in contrast to debts arising from a property settlement which are not encompassed within § 523(a)(5)'s exception to discharge. *Ramsey v. Hiller (In re Hiller)*, 44 B.R. 764, 767 (Bankr.N.D.Ohio 1984). Of course, as might be expected, it is not always entirely clear from the divorce decree or separation agreement as to whether the assumption of the debt was for maintenance and/or support, or was instead simply a division of the parties' marital assets. For example, a periodic payment made from one spouse to another, even if being paid to equalize the distribution of property awarded in the divorce, obviously also frees up funds for the non-debtor spouse to use for other purposes, including necessary support. Thus, as is so often the case when a marriage ends, this Court is called upon to make a determination as to whether the debts jointly incurred by a couple during their marriage are thereafter dischargeable by only one of the parties after the marriage has ended. However, such a situation necessarily places this Court in the very difficult position of having to balance two important, but very diametric, public policy concerns. Namely, the strong public policy concern of giving deserving debtor's a fresh start, versus the equally as strong public policy against permitting debtors to discharge their support obligations to their former dependents.

■■■ A non-debtor spouse who seeks to hold a debt nondischargeable under § 523(a)(5) must, at a minimum, establish that the following three elements are met:

(1) the debt(s) must have arisen "in connection" with a separation agreement, divorce decree, or other order of a court of record;

(2) the underlying debt(s) must actually be owed to the former spouse or child;

(3) the debt(s) owed to the former spouse must actually be in the "nature of alimony or support."

In this case, the Plaintiff and the Debtor do not contest the applicability of the first and second elements of § 523(a)(5). Accordingly, the Court will only concern itself with the final requirement of § 523(a)(5). In undertaking this analysis, the Court notes that as with other nondischargeability provisions under § 523(a) of the Bankruptcy Code, the burden of proving the elements of the statute, by a preponderance of the evidence, is placed upon the party contesting the dischargeability of the debt.[1] *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Gibson v. Gibson (In re Gibson)*, 219 B.R. 195, 199 (6th Cir. BAP 1998) (citing *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, (6th Cir.1983)); *Henderson v. Henderson (In re Henderson)*, 200 B.R. 322, 324 (Bankr.N.D.Ohio 1996). However, unlike the other nondischargeability provisions under § 523(a) which are construed narrowly, the nondischargeability provision of § 523(a)(5) is given a broad construction so as to promote the Congressional policy that favors enforcement of obligations for spousal and child support. *In re Jones*, 9 F.3d 878 (10th Cir.1993); *Rouse v. Rouse (In re Rouse)*, 212 B.R. 885 (Bankr. E.D.Tenn.1997).

■■■ The third element of § 523(a)(5), which is the most heavily litigated requirement of the statute, requires that the debt owed to the former spouse must actually be in the "nature of alimony or support,"

1. The Debtor in his briefs to the Court has implied that the Court must view the facts of this case in the light most favorable to the Debtor. However, as this case does not come before the Court upon the Plaintiff's motion for summary judgement, this is an incorrect statement of law.

*Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1107 (6th Cir.1983). In making the determination of whether an obligation is actually in the nature of support, the Sixth Circuit Court of Appeals has directed this Court to analyze the situation under federal bankruptcy law, not state law. *Id.* However, this does not imply that state law is completely irrelevant to a § 523(a)(5) analysis. For example, the actual underlying debt is created by state law as the "federal bankruptcy courts are obviously not empowered to create an obligation to support where it did not previously exist." *Id.* In addition, a bankruptcy court may look to the factors enumerated by the pertinent state law governing spousal support and asset division, as well as the findings of fact made by the state court issuing the divorce decree for guidance in making its decision. *Forsdick v. Turgeon*, 812 F.2d 801 (2nd Cir.1987).

■ Under Federal Law a four-part formula is used to determine whether payments by a debtor are actually in the nature of support, or instead should be classified as a property settlement. This formula, which is known as the *Calhoun* test, can be summarized as follows:

(1) the intent of the state court or the parties was to create a support obligation;

(2) the support provision has the actual effect of providing necessary support;

(3) the amount of the support provision is not so excessive as to be unreasonable under traditional concepts of support; and

(4) if the amount of support is unreasonable, how much of it should be characterized as nondischargeable for purposes of federal bankruptcy law

*Calhoun*, 715 F.2d at 1109–11; *Singer v. Singer (In re Singer)*, 787 F.2d 1033 (6th Cir.1986). Starting with the first factor from above, and considering that the Parties' obligations arose from the state court divorce decree and not from a separation agreement, the threshold issue in this case becomes whether it was the state court's intent to create a support obligation. If it was not, then the inquiry immediately stops and the credit card debts at issue are dischargeable.

■ In the instant case, the state court issuing the divorce decree did not label the Debtor's assumption of the Parties' credit card debts as alimony or support payments. To the contrary, the state court specifically stated that no alimony was to be awarded to either party, and that such a provision was non-modifiable. However, under federal law the language contained in a divorce decree is not dispositive of the issue as to whether the state court issuing the divorce decree intended to create a support obligation.[2] Instead, under federal law, the actual substance of the divorce decree prevails over its form, and thus when making a factual determination as to the intent of the state court issuing the divorce decree, this Court, along with other bankruptcy courts, has generally considered any relevant evidence, including those factors employed by the state courts.[3] *See, e.g., Hodges v.*

2. However, in a couple of recent decisions the Sixth Circuit Court of Appeals has considerably limited its holding in *Calhoun* so as to require a bankruptcy court to give great deference to the label a state court attaches to an obligation when it specifically designates the obligation as support. *Sorah v. Sorah (In re Sorah)*, 163 F.3d 397 (6th Cir.1998); *see also Fitzgerald v. Fitzgerald (In re Fitzgerald)*, 9 F.3d 517, 521 (6th Cir.1993). For example, the Court in *Sorah* stated that when an award is designated as support and has all the indicia of a support obligation, it should be conclusively presumed to be a support obligation.

However, when the situation involves the debtor spouse's assumption of a debt which is not specifically labeled as support, as is the situation in this case, all the tenets set out in *Calhoun* are still applicable.

3. Indeed, Ohio law itself generally recognizes that the issues of spousal support and a division of the martial assets are inextricably intertwined and take into account many of the same factors. O.R.C. §§ 3105.171 and 3105.18; *see also* 4 Collier on Bankruptcy ¶ 523.11[6], at 523–82 (15th ed.1998).

*Martin J. Holmes & Assc. (In re Hodges)*, 139 B.R. 846, 848 (Bankr.N.D.Ohio 1991).

■ Examples of such relevant factors specifically delineated by the Sixth Circuit Court of Appeals include: (1) the disparity of earning power between the parties; (2) the need for economic support and stability; (3) the presence of minor children; and (4) marital fault. *Singer v. Singer (In re Singer)*, 787 F.2d 1033, 1035 (6th Cir. 1986). Additional relevant factors specifically put forth by this Court include: (1) the nature of the obligations assumed; (2) the structure and language of the parties' agreement or the court's decree; (3) whether other lump sum or periodic payments were also provided; (4) the length of the marriage; (5) the age, health and work skills of the parties; (6) whether the obligation terminates upon the death or remarriage of the parties; (7) the adequacy of support absent the debt assumption; and (8) evidence of negotiations or other understandings as to the intended purposes of the assumption. *See, e.g., Friedrich v. Friedrich (In re Friedrich)*, 158 B.R. 675, 678 (Bankr.N.D.Ohio 1993); *see also* O.R.C. § 3105.18(C)(1).

When applying the foregoing factors to the instant case, it is clear that some factors cut in favor of the Debtor. For example, the lack of a large disparity in the Parties' earning power, the relatively short length of the Parties' marriage, the young age and good health of the Parties, the failure of the obligation to terminate upon the death or remarriage of the Plaintiff, and the lack of evidence concerning the negotiations or other understandings between the Parties all point to the dischargeability of the Debtor's credit card obligations.

Moreover, the Court also finds that one of the most important and dispositive of the above factors does not benefit either Parties' case. Specifically, the Court holds that the factor concerning the actual structure and language of the state court's divorce decree does not cut in favor of either Parties' position. *See Long v. West (In re Long)*, 794 F.2d 928, 931 (4th Cir.1986) (holding a court should start its analysis by looking to the language of the agreement or divorce decree). This conclusion is based upon the Court's analysis of the language contained in the Parties' divorce decree governing the Debtor's assumption of the credit card debts, which states that the assumption was "intended to equalize the total property/debt division and takes into account the award of no spousal support." Specifically, the Court notes that the grammatical structure of this clause does not reveal whether the state court actually intended the Debtor's assumption of the debts to serve as support because the word "intended" in this clause does not necessarily modify the portion of the clause pertaining to spousal support. Instead, the only information this Court has concerning the spousal support portion of the above clause is that the failure of the state court to award spousal support was at least a factor when it allocated the marital credit card debts to the Debtor. Unfortunately, it remains unclear exactly how much of a role the lack of a spousal support award played in the state court's decision. For example, "taking into account the award of no spousal support" does not automatically imply that such a factor actually affected the outcome of the state court's decision, or necessarily suggest that the state court meant for such an award to provide support to the Plaintiff. On the other hand, an equally plausible reading of the clause is that the debt assumption was actually meant to provide support. Further confusing the issue is the fact that the state court specifically stated that no spousal support was to be awarded to either party. Thus, at best, this Court finds the structure and language of the Parties' divorce decree to be ambiguous as to whether the state court intended to provide the Plaintiff with support by requiring the Debtor to assume the credit card debts. In fact, this ambiguity is best illustrated by the fact that both the Debtor and the Plaintiff have

asserted in their briefs to the Court that the language of the divorce decree is beneficial to their respective positions.

▮▮▮ Notwithstanding the foregoing analysis, the Court finds that two of the above enumerated factors concerning the state court's intention cut distinctly in favor of the Plaintiff's position, and for the following reasons this Court holds that the establishment of these factors is sufficient for this Court to make a finding that the state court intended for the Debtor's assumption of the Parties' credit card debt to provide support to the Plaintiff.

The first factor beneficial to the Plaintiff's position concerns the actual nature of the obligation assumed by the Debtor. As explained *supra*, the state court made it very clear that it was allocating a majority of the Parties' marital credit card obligations to the Debtor in order to equalize the property division made between the Plaintiff and the Debtor. In other words, the quid pro quo for the Debtor retaining his retirement accounts and all the monies contained therein, was his obligation to relieve the Plaintiff from a large portion of the unsecured debt incurred by the Parties during their marriage. However, this Court is very cognizant of the fact that the Debtor's retirement accounts are exempt property, and thus the Debtor will be entitled to maintain these accounts after he receives his bankruptcy discharge. *See* O.R.C. § 2329.66(A)(10)(a). Consequently, if the Debtor is granted his discharge on the credit card accounts, he would have effectively reformed the state court divorce decree to provide that he receive the greater portion of the marital assets, while at the same time imposing upon the Plaintiff all of the marital debts. Of course, such a concern in and of itself is not enough to deny the Debtor's discharge on the credit card debts at issue. However, when considering the following two precepts, it is clear to this Court that the Debtor's assumption of the credit card debts was intended for support: First, the state court was keenly aware that the Debtor was a prime candidate for a bankruptcy filing. In fact, the state court specifically stated that both Parties' would be on a "thin budget" after the divorce. (Magistrate's Decision at 5). Second, most state courts, and there is no reason to suspect the Common Pleas Court of Wood County, Ohio is any different, realize that support obligations arising from a divorce are nondischargeable in bankruptcy. Consequently, as this Court finds it incredulous that the state court would have intended the Debtor to retain a majority of the marital assets while at the same time imposing upon the Plaintiff all of the marital debts, this Court holds that the state court, given the nature of the obligations assumed by the Debtor, intended such obligations to be in the nature of support. *See, e.g., Conner v. Conner,* 170 Ohio St. 85, 162 N.E.2d 852 (1959) (upholding an award of alimony to the wife where the division of joint property in connection with the parties' divorce was approximately 37½% to the wife and 62½% to the husband).

Two additional considerations reinforce this holding. First, had the state court wanted to make a strict distribution of the Parties' property, it could have simply allocated the Parties' credit card debts equally while at the same time requiring the Debtor to turn over one-half of the marital portion of his retirement accounts to the Plaintiff. However, the state court did not do this, and instead took into consideration the equities of the situation. Second, the state court, by awarding to the Debtor the full value of his retirement accounts, was in essence providing what would amount to be future support to the Debtor. However, by doing this it was taking such future support away from the Plaintiff. Thus, it seems credible that in return for the Debtor receiving such future support, the state court would have also intended that the Debtor pay some present support to the Plaintiff in the form of an expense abatement.

The second factor, which is beneficial to the Plaintiff's position concerns the actual need for economic support. In fact, in most instances once this factor is established, the state court is conclusively deemed to have intended for the payment of the debt to have been in the nature of support. For example, this Court, following the Sixth Circuit Court of Appeals' decision in *Singer v.. Singer (In re Singer)*, 787 F.2d 1033, 1035 (6th Cir.1986), held that, "[i]rrespective of how it is labeled, a court may presume that a so-called property settlement is intended for support when the circumstances of the case indicate that the recipient spouse needs·support." *Nofziger v. Zuccarell (In re Zuccarell)*, 181 B.R. 42, 44 (Bankr. N.D.Ohio 1995); *see also Friedrich v. Friedrich (In re Friedrich)*, 158 B.R. 675, 679–80 (Bankr.N.D.Ohio 1993); *Northcutt v. Northcutt (In re Northcutt)*, 158 B.R. 658, 662–63 (Bankr.N.D.Ohio 1993).

In this Court's estimation, it seemed readily apparent to the state court that the Plaintiff had an actual need for economic support as the Plaintiff's ability to support herself was in very large part contingent upon the Debtor's assumption and payment of the credit card debts at issue. In fact, as previously pointed out, the state court specifically noted that both Parties after the divorce would "be on thin budget. . . ." (Magistrate's Decision at 5). Furthermore, when one combines this with the fact that the Plaintiff is the residential parent of the Parties' child, the Plaintiff's need for financial support, in the form of the Debtor's assumption of the credit card debts, becomes even more readily apparent. *See Chapman v. Chapman (In re Chapman)*, 187 B.R. 573 (Bankr.N.D.Ohio 1995).

 The Debtor, however, argues that the lack of a "hold harmless" clause for the credit card debts in the divorce decree demonstrates a lack of intent by the state court to make such debts in the nature of support. Although, the Court agrees that a "hold harmless" provision in a separation agreement or divorce decree is strong evidence of an intent to create a support obligation, the lack thereof does not necessarily indicate that the underlying obligation is not in the nature of support. For example, this Court has on more than one occasion held that a "hold harmless" provision is only one factor, among all the other present in the case, used to ascertain whether the underlying debt(s) was actually in the nature of support. *Shimp v. Shimp (In re Shimp)*, 59 B.R. 553, 555–56 (Bankr.N.D.Ohio 1986) (citing *Conrad v. Conrad (In re Conrad)*, 33 B.R. 601 (Bankr.N.D.Ohio 1983)). Accordingly, based upon the foregoing analysis, the Court holds that sufficient evidence has been presented to meet the Plaintiff's burden of proving by a preponderance of the evidence that the state court intended to create a support obligation by requiring the Debtor to assume both his and the Plaintiff's credit card debts.

 Nevertheless, merely establishing that the state court intended to create a support obligation does not mean that the debt is per se nondischargeable. Instead, this Court must now examine the second element of the *Calhoun* test which necessitates that the support provision have the actual effect of providing necessary support. *Calhoun*, 715 F.2d at 1109. This analysis is known as the "present needs" test.[4] In making this determination, the Sixth Circuit Court of Appeals in *Calhoun* directs this Court to "look to the practical effect of the discharge . . . upon the [non-debtor] spouse's ability to sustain daily needs." *Id.* In other words, "[i]f without the loan assumption the [non-debtor] spouse could not maintain the daily

---

4. The Sixth Circuit Court of Appeals recently ruled in *Fitzgerald v. Fitzgerald (In re Fitzgerald)*, 9 F.3d 517 (6th Cir.1993) that the "present needs" test is no longer applicable when the state court specifically denotes an obligation as support, and the obligation was intended to serve as support. However, the "present needs" test is still applicable when a court ascertains whether the assumption of a debt is in the nature of support.

necessities of life, such as food, housing and transportation, the effect of [the] loan assumption may be found in the nature of support for purposes of the Bankruptcy Act." *Id.* (internal quotations omitted). However, in undertaking this analysis, substance must prevail over form. *Id.* Thus, a bankruptcy court must also necessarily look at the actual nature of the individual loan to see if there is a real possibility that the creditors will seek redress against the non-debtor spouse on such debts. For example, discharging the debtor on a joint debt secured by collateral such as an automobile, is unlikely to have much of an effect on the non-debtor spouse's ability to meet their daily needs when the secured creditor may simply seize the automobile in at least partial satisfaction of the debt. *Id.* However, at the opposite end of the spectrum are the general unsecured debts in which the creditor's only hope of recovery, after the debtor-spouse files for bankruptcy, is to obtain a monetary judgment against the non-debtor spouse, and thereafter levy on their assets.

In the Plaintiff's brief to this Court, the Plaintiff contends that there is a very real possibility that the creditors of the debt at issue could initiate action against her and her business if she is forced to assume the credit card debts on her own. On the other hand, the Debtor asserts that no real evidence has been presented tending to show that the creditors of the debt at issue are about to initiate any action against the Plaintiff. In other words, the Debtor argues that in order for the Plaintiff to demonstrate that there exists a real possibility that the creditors of the debt at issue will initiate collection activities against her, it must be shown that such an action is about to occur.

█ Although, the Court agrees that evidence tending to show that an imminent collection action is about to be commenced against the Plaintiff would be helpful to her case, this Court declines to adopt a per se rule that such evidence is absolutely

needed. In this Court's judgment, to do otherwise would be highly inequitable to the non-debtor spouse. This is because the Court's adoption of the Debtor's argument would leave the non-debtor spouse in limbo until such a time as a creditor is about to commence collection activities against them. However, during the interim period between the debtor's bankruptcy discharge and the institution of collection activities against the non-debtor spouse, which could last for a considerable period of time, many adverse events could occur to the non-debtor spouse. For example, interest and other penalties could be accumulating on the debt for which the non-debtor spouse may or may not be solely liable. Consequently, this Court espouses the view that the better approach is to have the non-debtor spouse demonstrate that there exists a real possibility that the creditors of the joint debt will initiate collection activities against him or her, instead of requiring a demonstration that collection activities are about to occur. In the instant case, the Court finds that the Plaintiff has met this burden given the fact that, (1) the debts at issue are unsecured, and (2) a relatively large amount of money is currently owing on the credit card debts (i.e., over Twenty Thousand Dollars ($20,-000.00)). *See Chapman v. Chapman (In re Chapman),* 187 B.R. 573, 576 (Bankr. N.D.Ohio 1995). Consequently, this Court must simply ascertain, pursuant to the "present needs" test, whether the Debtor's discharge on the credit card debts could affect the Plaintiff's ability to provide for the daily needs of herself and the Parties' child.

█ From the evidence presented to the Court it seems clear that the Plaintiff is barely getting by. According to the financial figures provided to the Court, which the Debtor does not contest, the Plaintiff has a shortfall in her occupation income versus her monthly expenses of well over Four Hundred Fifty Dollars ($450.00) per month. Hence, it seems clear to the Court that any increase in the

Plaintiff's monthly expenses could have dire consequences on the Plaintiff's ability to provide for the basic necessities for herself and her child. *See Chapman,* 187 B.R. at 576. Accordingly, the Plaintiff has demonstrated to the satisfaction of this Court that the second element of the *Calhoun* has been satisfied.

■■■ The third step of the *Calhoun* test requires the Court to examine whether the amount of the now determined support provision is so excessive so as to be manifestly unreasonable under the traditional concepts of support. *Calhoun,* 715 F.2d at 1110. The purpose for this element is to prevent a debtor from effectively contracting away their right and opportunity for a fresh start under the Bankruptcy Code. This analysis is normally made by inquiring into whether the debt assumption substantially exceeded the debtor spouse's present and foreseeable ability to pay the support, as viewed from the time the debt was assumed. (In addition, if the equities of the case require, the Court may also consider the debtor's relative financial position at the time the debtor's bankruptcy petition is filed.) *Id.; In re Plaugher,* 37 B.R. 760 (Bankr.N.D.Ohio 1984); *In re Miller,* 17 B.R. 773 (Bankr.N.D.Ohio 1982). In other words, this Court is to ask whether it is feasible that a state court could have ordered the Debtor to pay support payments in the amount of the debt assumption that was actually awarded. As the Court in *Calhoun* stated,

> [w]e emphasize that the nature of this final inquiry as to whether the loan assumption would constitute an excessive degree of support beyond that which any state court would reasonably allow given the parties' relative circumstances, is a limited one. It is not intended that the Bankruptcy Court sit as a "super-divorce" court. Rather, the purpose of such inquiry is to ensure that the degree of support represented by the loan assumptions ... does not clearly exceed that which might reasonably have been awarded as support by a state court after an adversarial proceeding.

715 F.2d at 1110.

■■■ Under Ohio law a major factor concerning the amount of support to be awarded is the payor's ability to pay. *See e.g. Coffman v. Coffman,* 76 Ohio App. 330, 62 N.E.2d 302 (1945). In making a determination of whether the payor-spouse does have the ability to pay, state courts generally consider two factors; the first, and most important of which is the Debtor's income. *See* O.R.C. § 3105.18(C)(1)(a). In the case sub judice, the Debtor represented to the Court, through his bankruptcy schedules, that his income was Two Thousand Three Hundred Twenty-four and 80/100 Dollars ($2,324.80) per month or Twenty-seven Thousand Eight Hundred Ninety-seven and 60/100 Dollars ($27,897.60) per year. However, the Debtor has reported an annual income of as high as Thirty-two Thousand Dollars ($32,000.00) per year, and it was this figure that was used by the state court in the Debtor's divorce proceeding. Thus, for purposes of this analysis, the Court finds that Thirty-two Thousand Dollars ($32,000.00) per year is a more reliable figure.

■■■ In light of this annual income, the Court does not view the Debtor's debt assumption of Twenty Thousand Four Hundred Fifty-one and 73/100 Dollars ($20,451.73) as manifestly unreasonable, especially when considering that the Plaintiff is the residential parent of the Parties' child.

The second factor this Court must consider regarding the Debtor's ability to pay the support payments, are the Debtor's reasonable expenses. As previously noted, the Debtor has expenses of One Thousand Five Hundred Twenty-seven and 50/100 Dollars ($1,527.50) per month, causing the Debtor to sustain a shortfall of approximately Five Hundred Seventy Dollars ($570.00) per month. However, this shortfall was also based on the Debtor's lower income figure of just under Twenty-eight Thousand Dollars ($28,000.00) per year.

However, after imputing to the Debtor Four Thousand Dollars ($4,000.00) more per year as gross income, the Debtor's monthly income, after figuring in a 25 percent decrease for taxes and other withholdings, increases by Two Hundred Fifty Dollars ($250.00) per month. In addition, the Court questions a Seven Hundred Fifty Dollar ($750.00) per month rental payment for a single individual. Moreover, some other expenses listed in the Debtor's bankruptcy schedules raise the skepticism of this Court, such as an expenditure for cable television. Thus, considering the extra income imputed to the Debtor and the ability of the Debtor to lower some of his expenses, this Court considers it feasible that the Debtor could actually experience a positive cash flow, if he is not already doing so, which could then be used in payment of the credit card debts. This is especially true given the fact that the Debtor has already received a discharge on his other unsecured debts. Consequently, pursuant to the third prong of the *Calhoun* test, the Court finds that the support order issued by the state court was not manifestly unreasonable under the traditional concepts of support given the Debtor's income and reasonable expenses. *See Chapman v. Chapman, (In re Chapman)* 187 B.R. 573, 575 (Bankr.N.D.Ohio 1995). (The Court will not address the last prong of the *Calhoun* test which simply requires the Court to lower the support obligation if it finds that the support award was manifestly unreasonable under the third prong of the *Calhoun* test. *Calhoun,* 715 F.2d at 1110; *Friedrich v. Friedrich (In re Friedrich),* 158 B.R. 675, 678, 679 (Bankr.N.D.Ohio 1993)). Accordingly, the Court holds that the credit card debts assumed by the Debtor in the Parties' divorce decree were actually in the nature of alimony and support, and thus the debts are nondischargeable under 11 U.S.C. § 523(a)(5).

In summary the Court finds that the Plaintiff has established by a preponderance of the evidence that the elements contained in § 523(a)(5), including the requirements specifically delineated by the Sixth Circuit Court of Appeals in *Long v. Calhoun (In re Calhoun),* 715 F.2d 1103 (6th Cir.1983), have been satisfied. In reaching this conclusion, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

***ORDERED*** that the credit card debts, assumed by the Defendant, Richard A. Luman, pursuant to the Plaintiff's and the Defendant's Divorce Decree entered on November 3, 1997, by the Court of Common Pleas, Wood County, Ohio, Case No. 96-DR-257, be, and are hereby, determined to be NONDISCHARGEABLE pursuant to 11 U.S.C. § 523(a)(5).